IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF ILLINOIS

| | |
|---|---|
| SHABAZZ MUHAMMAD, | ) |
| | ) |
| Plaintiff, | ) |
| | ) |
| vs. | ) CIVIL NO. 01-198-GPM |
| | ) |
| THOMAS F. PAGE, ODIE WASHINGTON, | ) |
| ROGER D. COWAN, and DONALD | ) |
| SNYDER, JR., | ) |
| | ) |
| Defendants. | ) |

# MEMORANDUM AND ORDER

**MURPHY, Chief District Judge:**

INTRODUCTION

This matter is before the Court on Plaintiff's petitions for writs of habeas corpus ad testificandum to permit him to be present at trial and to procure the presence of several incarcerated witnesses (Docs. 142, 134-137) and his motion requesting that this Court direct the United States Marshal to serve Plaintiff's subpoenas (Doc. 143). Also before the Court is Plaintiff's motion in limine (Doc. 133). This matter is set for trial on October 4, 2005, to determine whether the establishment by Defendants of a policy at Menard Correctional Center regarding Muslim inmates' attendance of Jumuah services violated the Religious Land Use and Institutionalized Persons Act of 2000 and/or Plaintiff's First Amendment Rights.

DISCUSSION

Plaintiff's Petitions for Writs of Habeas Corpus Ad Testificandum (Docs. 142, 134-137)

In considering Plaintiff's requests, the Court will consider the information provided by

Plaintiff in his motions (Docs. 142, 134-137), as well as in the proposed final pretrial order (received Aug. 30, 2005). Plaintiff requests that the Court issue writs for Clayborn Smith, William Doyle, and Fred Koger so that they may testify about his claim. He also requests a writ for himself.

It is well established that there is a constitutional right to a fair trial in a civil case, and, although difficult, it is essential to maintain this right for prisoner-plaintiffs. *Lemons v. Skidmore*, 985 F.2d 354, 357 (7th Cir. 1993). At a minimum, fundamental fairness requires that a plaintiff have the opportunity to present his case such that "the trier of fact can make a meaningful search for the truth." *Latiolais v. Whitley*, 93 F.3d 205, 207 (5th Cir. 1996). However, the Seventh Circuit Court of Appeals "has long recognized that a prisoner lawfully committed has no constitutional right to be produced as a witness in his own civil rights action." *Stone v. Morris*, 546 F.2d 730, 735 (7th Cir. 1976). The power to issue writs of habeas corpus ad testificandum is expressly granted to district courts under 28 U.S.C. § 2241(c)(5), and it is within the discretion of the trial court to determine whether a prison inmate shall attend court proceedings held in connection with an action initiated by that inmate. *Stone*, 546 F.2d at 735. In exercising its discretion, the trial court must weigh the interest of the plaintiff in presenting his testimony in person against the interest of the state in maintaining the confinement of the plaintiff-prisoner. *Id.*; *Jones v. Hamelman*, 869 F.2d 1023, 1030 (7th Cir. 1989). The trial court shall consider the following factors:

> the costs and inconvenience of transporting a prisoner from his place of incarceration to the courtroom, any potential danger or security risk which the presence of a particular inmate would pose to the court, the substantiality of the matter at issue, the need for an early determination of the matter, the possibility of delaying trial until the prisoner is released, the probability of success on the merits, the integrity of the correctional system, and the interests of the inmate in presenting his testimony in person rather than by deposition.

*Stone*, 546 F.2d at 735-36. In considering these factors, this Court is mindful of the Court of Appeals' observation that "it is well known that inmates regard testifying in court as a lark, an

outing, a break from prison routine." *United States v. Solina*, 733 F.2d 1208, 1213 (7th Cir. 1984).

With respect to Clayborn Smith, Plaintiff expects Smith, who is a Muslim, to testify that Defendants could have held two separate simultaneous prayer services at Menard Correctional Center and that there were unoccupied rooms in the school building and other usable space at Menard (Doc. 135). Illinois Department of Corrections (IDOC) records indicate that Smith is incarcerated in a maximum security facility and is classified as a "moderate" escape risk. He currently is serving a life sentence for murder, among other things. He has a history of armed robbery, mob action, aggravated battery, and arson. His IDOC disciplinary infractions include multiple violations of possession/solicitation of unauthorized personal information and providing false information to staff. Additionally, he is listed as "leader" of the Mickey Cobra gang. The Court need not proceed beyond the first two factors - specifically, the costs and inconvenience of transporting Smith from Menard Correctional Center to the courtroom and the potential danger or security risk that his presence might pose to the court - to find that the interest of Plaintiff in presenting Smith's testimony in person is outweighed by the interest of the state in maintaining his confinement. However, the Court finds that Smith's testimony, while not live, can be presented via video-conferencing, and such arrangements shall be made by the Court.

With respect to William Doyle, Plaintiff expects Doyle, who is a Muslim, to testify "how the Menard policy of regulation" affected Muslims at Menard and "about the security process when Jumu'ah service was going on and how the defendants have exaggerated thier [sic] security claim" (Doc. 136). IDOC records indicate that Doyle currently is incarcerated in a maximum security facility and is classified as a "moderate" escape risk. He currently is serving a 55-year sentence for murder. His criminal history includes unlawful use of weapons, aggravated assault, and federal drug charges, and his IDOC disciplinary infractions include assault on staff, gang activity, and

possession/solicitation of unauthorized personal information. He is on "mail watch" status, and he is listed as "leader" of the Black P Stone Nation gang. Much like Smith, the costs and inconvenience of transporting Doyle from Stateville Correctional Center to the courtroom and the potential danger and security risk posed by his presence outweigh Plaintiff's interest in presenting Doyle's testimony in person. As with Smith, the Court finds that such testimony can be presented via video-conferencing, and the Court will make the necessary arrangements.

Plaintiff expects Fred Koger to testify regarding how other maximum security prisons allow the full Muslim population to gather each week for Jumuah service (Doc. 137). IDOC records indicate that Koger is incarcerated in a maximum security facility and is classified as a "moderate" escape risk. He currently is serving a life sentence for murder. He has a criminal history that includes murder, attempted murder, aggravated discharge of a firearm, and armed robbery. His IDOC disciplinary infractions include possession of homemade weapons and possession of drugs and drug paraphernalia. He is listed as a member of the Gangster Disciples gang. Similar to Smith and Doyle, the costs and inconvenience of transporting Koger from Stateville Correctional Center to the courtroom and the potential danger and security risk posed by his presence far outweigh Plaintiff's interest in presenting Koger's testimony in person. However, the Court finds that his testimony can be presented via video-conferencing, and such arrangements will be made by the Court.

Finally, the Court addresses Plaintiff's request to appear in person to present his case and testify. Notably, Plaintiff is proceeding *pro se*. However, like his other witnesses, the technology is available to allow him not only to testify via video-conferencing but to present his entire case, including selecting a jury, questioning his witnesses, and cross-examining Defendants' witnesses, using the video-conferencing equipment. *See United States v. Baker*, 45 F.3d 837, 843-44 (4th Cir.

1995) (video conference procedure did not violate due process rights of respondent at a civil commitment hearing).  IDOC records indicate that Plaintiff is incarcerated in a maximum security facility and is classified as an "extreme" escape risk.  He currently is serving a 55-year sentence for aggravated criminal sexual assault with a weapon involving a victim under 18 years of age, armed robbery, and aggravated kidnapping.  He is on the "mail watch" program.  His extensive IDOC disciplinary history includes multiple assaults on staff and prisoners, gang activity, intimidation and threats to staff and prisoners, and attempted escape for possessing a homemade dummy, which was found in his cell during a routine shakedown.  He is listed as a member of the Gangster Disciples gang.  The Court has carefully considered this matter and investigated the available technology.  In light of the ability of Plaintiff to testify and question witnesses from Tamms Correctional Center, his current place of incarceration, the Court finds that the costs and inconvenience of transporting Plaintiff from Tamms to the courtroom and the potential danger and obvious security risk posed by his presence outweigh Plaintiff's interest in appearing in person.

<u>Plaintiff's Motion Requesting the Court to Direct the Marshal to Serve Plaintiff's Subpoenas (Doc. 143)</u>

Plaintiff wishes to subpoena Defendants Page, Washington, Cowan, and Snyder, in addition to Wali Furqan of the Masjid Al-Muminum Islamic Center in St. Louis, Missouri.  He asks that the Court compel the Marshal to serve the subpoenas because he is indigent.

With respect to Wali Furqan, the Court will not assist Plaintiff in obtaining what would likely amount to an expert witness by using a subpoena to compel testimony.  *See McNeil v. Lowney*, 831 F.2d 1368, 1373-74 (7th Cir. 1987) (affirming district court's denial of prisoner-plaintiff's request to issue subpoenas for physicians).  If Mr. Furqan wishes to testify, he is free to do so, and a subpoena is not necessary.  With respect to Defendants, they are listed as witnesses on their own

witness list, and their counsel is **DIRECTED** to make them available during Plaintiff's case. Therefore, subpoenas are not necessary.

Plaintiff's Motion In Limine (Doc. 138)

In his motion in limine, Plaintiff asks that Defendants and their attorneys not be allowed to address Plaintiff or his witnesses by anything other than their names before the jury. Defendants have no objection to this request. Accordingly, the request made in Paragraph 3 of the motion is granted. Additionally, Plaintiff asks that none of Defendants' witnesses be allowed to sit in the courtroom as spectators prior to their testimony. Defendants have no objection to this request as long as it does not apply to parties. The request made in Paragraph 6 of the motion is granted under Federal Rule of Evidence 615 and does not apply to parties to the case. Plaintiff also asks that the Court prohibit Defendant from offering expert testimony. Defendants point out that because they have no expert testimony to present, this request is moot. Accordingly, the request made in Paragraph 7 of the motion is granted. Plaintiff asks that Defendants and their attorneys not be allowed to introduce any evidence regarding the prison disciplinary history of Plaintiff or his witnesses. Defendants respond that the reason for the religious attendance policy at issue is the threat to prison security posed by the massing of maximum security inmates for any purpose but state that they will seek to introduce disciplinary evidence, if at all, only for impeachment purposes. The Court reserves ruling on Paragraph 4 of Plaintiff's motion. Plaintiff also asks the Court to exclude any evidence relating to Plaintiff's or his witnesses' past or present criminal convictions other than the fact that they are convicted felons. Defendants respond that the criminal convictions will be evident due to the nature of the case and the facts attendant thereto. The Court reserves ruling on Paragraph 5 of Plaintiff's motion.

CONCLUSION

For the foregoing reasons, Plaintiff's petitions for writs of habeas corpus ad testificandum to permit him to be present at trial and to procure the presence of several incarcerated witnesses (Docs. 142, 134-137) are **GRANTED in part and DENIED in part**, such that they will testify via video-conferencing from their respective institutions; Plaintiff's motion requesting that this Court direct the United States Marshal to serve his subpoenas (Doc. 143) is **DENIED**; and Plaintiff's motion in limine (Doc. 133) is **GRANTED in part and RESERVED in part**.  This matter remains set for jury trial on October 4, 2005, at 8:00 a.m.

**IT IS SO ORDERED.**

DATED:  09/15/05

s/ G. Patrick Murphy
G. PATRICK MURPHY
Chief United States District Judge
