IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF ILLINOIS

| | |
|---|---|
| SHABAZZ MUHAMMAD | ) |
| | ) |
| Plaintiff, | ) |
| | ) |
| vs. | )   CIVIL NO.  01-198-GPM |
| | ) |
| THOMAS F. PAGE, ODIE WASHINGTON, | ) |
| ROGER D. COWAN, and DONALD | ) |
| SNYDER, JR., | ) |
| | ) |
| Defendants. | ) |

# MEMORANDUM AND ORDER

**MURPHY, Chief District Judge:**

This case was tried without a jury at the Illinois Department of Corrections (IDOC) prison at Tamms, Illinois.  Plaintiff, Shabazz Muhammad, is incarcerated at that prison.  He is a Muslim and has been practicing his faith for the larger part of the 19 years he has been in prison.  Before Tamms, he was at all of the IDOC maximum security prisons:  Menard, Stateville, and Pontiac.  He expects that at some time he will return to Menard.  A certain policy at Menard which limits Muslim prisoners from participating in Jumu'ah services provoked this suit by Mr. Muhammad.  His claims for injunctive relief are all that remain of his suit.

Muslim men, each Friday, congregate and pray.  This is the Jumu'ah service.  Muslim men, but not women, are obligated to pray in congregation at this service.

Before Mr. Muhammad arrived at Menard in 1999, prison officials, for security purposes, limited actual participation in Jumu'ah services to once a month.  The idea behind this policy is to keep the prisoners divided into four smaller and, thus, more manageable groups.

The Religious Land Use and Institutionalized Persons Act of 2000 (RLUIPA), 42 U.S.C. § 2000cc-1, prohibits the government from restricting a prisoner exercising his religion, except to further a compelling state interest. 42 U.S.C. § 2000cc-1(a)(1)-(2). Security is a compelling state interest, and the question is whether the Menard policy is the least restrictive means available to maintain security. Mr. Muhammad challenges Menard's policy under the RLUIPA as well as the First Amendment to the United States Constitution.

The Menard policy is to televise Jumu'ah services to those Muslims who are not scheduled to actually congregate for the service. Some Muslims, like Mr. Muhammad, because of indigency or administrative discipline, do not have access to a television. An interesting twist to televised Jumu'ah services results from the crowded conditions at Menard. Two prisoners often are placed in one cell. So, a prisoner without television privileges watches the Jumu'ah service if his cell mate has a television. At a minimum, this is evidence that Menard's policy is not intentionally discriminatory. On the other hand, it is odd that a prisoner's access to televised Jumu'ah services turns on the mere happenstance of the identity of his cell mate.

Mr. Muhammad has cleanly presented a nice legal issue to the Court, but there is an underlying and insurmountable problem. Article III of the United States Constitution restricts federal courts from adjudicating matters that do not present actual cases or controversies. *See Allen v. Wright*, 468 U.S. 737, 750 (1984). A plaintiff must demonstrate a concrete and particularized "injury-in-fact" that is actual or imminent, not merely conjectural or hypothetical. *Lujan v. Defenders of Wildlife*, 504 U.S. 555, 560-61 (1992). Plaintiff is no longer at Menard, and he lacks standing to maintain this suit. He may return to Menard, and the challenged policy may be in effect. This is not enough. This could be years down the road. Assuming he finds himself at Menard, the

policy may then be different.

The Supreme Court has addressed the question of standing in a case where the plaintiff seeks injunctive relief. In *City of Los Angeles v. Lyons*, 461 U.S. 95 (1983), the plaintiff sought to enjoin the Los Angeles police department from using the "choke-hold" on arrestees unless the officers were threatened with immediate use of deadly force. There, Justice White stated:

> Absent a sufficient likelihood that he will again be wronged in a similar way, Lyons is no more entitled to an injunction than any other citizen of Los Angeles; and a federal court may not entertain a claim by any or all citizens who no more than assert that certain practices of law enforcement officers are unconstitutional.

*Lyons*, 461 U.S. at 111. Admittedly, Mr. Muhammad is more likely than the plaintiff in *Lyons* to be wronged in a similar way, but the anticipated wrong is still hypothetical and conjectural. In *Knox v. McGinnis*, 998 F.2d 1405 (7th Cir. 1993), the plaintiff sought to enjoin IDOC officials from using the "black box"[1] on all inmates in disciplinary segregation at Stateville Correctional Center. After his case was filed, the plaintiff was released from segregation and was no longer subject to use of the black box. Relying on *Lyons*, the Seventh Circuit held that the plaintiff lacked standing to bring the claim because the possibility that he might be returned to segregation was too remote. *Knox*, 998 F.2d at 1413.

The Court previously addressed whether Mr. Muhammad's injunctive relief claims could be dismissed as moot and found that Defendants had not met their burden to show mootness (*see* Doc. 124). But mootness is different than standing.

---

[1] A "black box" is a hard plastic box placed over the lock apparatus that runs between the prisoner's handcuffs. A chain runs through the box and encircles the prisoner's waist. The chain is tightened and then locked in back so that the prisoner's hand, restrained by handcuffs and the black box, are pulled against his stomach. *Knox v. McGinnis*, 998 F.2d 1405, 1407 (7th Cir. 1993).

> All of the doctrines that cluster about Article III – not only standing but mootness, ripeness, political question, and the like – relate in part, and in different though overlapping ways, to an idea, which is more than an intuition but less than a rigorous and explicit theory, about the constitutional and prudential limits to the powers of an unelected, unrepresentative judiciary in our kind of government.
>
> The case-or-controversy doctrines state fundamental limits on federal judicial power in our system of government.
>
> The Art. III doctrine that requires a litigant to have "standing" to invoke the power of a federal court is perhaps the most important of these doctrines. In essence the question of standing is whether the litigant is entitled to have the court decide the merits of the dispute or of particular issues. Standing doctrine embraces several judicially self-imposed limits on the exercise of federal jurisdiction, such as the general prohibition on a litigant's raising another person's legal rights, the rule barring adjudication of generalized grievances more appropriately addressed in the representative branches, and the requirement that a plaintiff's complaint fall within the zone of interests protected by the law invoked. The requirement of standing, however, has a core component derived directly from the Constitution. A plaintiff must allege personal injury fairly traceable to the defendant's allegedly unlawful conduct and likely to be redressed by the requested relief.

*Allen*, 468 U.S. at 750-51 (internal quotations and citations omitted). Mr. Muhammad's claims fail because he lacks standing to invoke the power of the federal court to issue the injunctive relief sought. For this reason, judgment will be entered in favor of Defendants and against Mr. Muhammad.

**IT IS SO ORDERED.**

DATED:  2/27/06

s/ G. Patrick Murphy<br>
G. PATRICK MURPHY<br>
Chief United States District Judge